# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUKESH MEHLA, | No. 19cv2245 WQH BGS |
| Petitioner, | AGENCY FILE No. A203 604 060 |
| v. | PETITIONER'S REPLY TO RETURN PETITION FOR WRIT OF HABEAS CORPUS |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et. al. | |
| Respondents. | |

**PETITIONER'S REPLY TO RETURN TO PETITION FOR WRIT OF HABEAS CORPUS Page - 1**

Petitioner respectfully submits this reply to Respondents' return.

I. JURISDICTION:

a. Section 1252(e)(3)

Although Petitioner may bring a challenge to credible fear procedures that the current administration is implementing in the context of expedited removal proceedings requesting review of any "regulation, or a written policy directive, written policy guideline, or written procedure and its implementation", and if he chooses to do so, the Respondents are correct that he would be precluded to do so in this Honorable Court by 8 U.S.C. § 2352(e)(3), as Congress has conferred exclusive jurisdiction to the United States District Court for the District of Columbia. However, Petitioner is not bringing this habeas action to ask this Court to review the "Lesson Plans" that Petitioner has referred to and attached to his Petition.

b. The Suspension Clause

Instead, Petitioner is bringing this action pursuant to the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, which requires that Petitioner have a "meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting INS v. St. Cyr, 533 U.S. 289, 302 (2001)).

The Suspension Clause mandates, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Our nation's founders viewed the writ as a "vital instrument" to secure individual liberty. *Boumediene v. Bush*, 553 U.S. 723 at 743. "The Clause protects the rights of the detained by a means consistent with the essential design of the Constitution. It ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty." *Id*. at 745 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (opinion of O'Connor, J.)). The Suspension Clause prevents Congress from passing a statute that effectively suspends the writ absent rebellion or invasion. *See Felker v. Turpin*, 518 U.S. 651, 663–64 (1996).

In *Boumediene*, the Court gleaned from its precedents two "easily identified attributes of any constitutionally adequate habeas corpus proceeding." 553 U.S. at 779. First, the "privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Id*. (quoting *St. Cyr*, 533 U.S. at 302). Second, "the habeas court must have the power to order the conditional release of an individual unlawfully detained." *Id*. Beyond those minimum requirements, "depending on the circumstances, more may be required." *Id*.

The *Boumediene* Court further emphasized that "the necessary scope of habeas review in part depends upon the rigor of any earlier proceedings." Id. at 781; see also id. at 786 (noting that "habeas corpus review may be more circumscribed if the underlying detention proceedings are more thorough"). For that reason, <u>courts sitting in habeas afford deference when reviewing another court's decision</u>, **but when a petitioner is "detained by executive order . . . the need for collateral review is most pressing."** *Id*. at 783. To be effective, the "habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Id*.

More specifically, Petitioner challenges the procedures that led to his expedited removal order and whether Respondents complied with the procedures in his individual case or applied the correct standard legal.

In order to support his allegation that he was not given a "meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law, Petitioner references the "Lesson Plans" as examples of this administration's continued efforts to deny asylum seekers a "meaningful opportunity" to seek asylum in the U.S.

Furthermore, Respondents cite to no authority that suggests that a possible right of Petitioner to seek judicial review of determinations under 8 USC section 1225(b) and any "regulation, or a written policy directive, written policy guideline,

or written procedure and its implementation" under section 1252(e)(3) forecloses his right to seek review from this Court pursuant to the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, which Petitioner has chosen to do.

Therefore, this Court does have jurisdiction under the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, as is properly pled in Petitioner's Petition.

## II. PETITIONER HAS NOT FAILED TO STATE A CLAIM

Petitioner has demonstrated that he was not provided with a meaningful opportunity to demonstrate he was eligible for asylum.

In order to be eligible for asylum, an applicant must have suffered past persecution or have a well-founded fear of persecution "on account of" one or more of the five grounds enumerated in INA § 101(a)(42)(A): race, religion, nationality, membership in a particular social group, or political opinion. See INA § 101(a)(42)(A); INS v. Elias-Zacarias, 502 U.S. 478, 481−82 (1992). an applicant must demonstrate that he could not reasonably relocate within his country of origin to avoid persecution. 8 C.F.R. § 1208.13(b)(2)(ii).

### a. Past Persecution

The Asylum Officer ("AO") found Petitioner to be credible and that his testimony was "internally and externally consistent with CBP records that he feared being killed if returned to India." See Credible Fear Determination Checklist and Written Analysis" included in Petitioner's *Exhibit B, Electronic*

*Document 1-4, Page 29*. Moreover, the AO determined that Petitioner had established a significant possibility of past persecution on account of his religion. *Id.* at Page 30

  b. <u>Internal Relocation</u>

  Although the AO found Petitioner to be credible and having suffered past persecution, the AO went on to conclude that "there is substantial evidence" that the Petitioner "could internally relocate and that it would be reasonable for him to do so. *Id.* The AO went on to state that Petitioner "did not know any other Christian who had been harmed anywhere in India, relocated after being harmed, or who was harmed after relocating." The AO further tried to reason that Petitioner "was unable to provide specific facts to support his belief that BJP Party supporters could find him using his Aadhhar ID. The applicant stated that police would assist the BJP Party supporters in tracking the applicant, but was unable to provide specific facts to support this statement of belief." The AO went to claim that Petitioner "speculated that the BJP Party supporters could find his biometric information 'online' but was unable to explain what that meant or provide any specific facts to support this statement of belief." The AO goes on to cite to some random alleged "country conditions" to support his own conclusions. *Id.* In sum, the AO turned the very limited credible fear interview into a full-blown asylum

**PETITIONER'S REPLY TO RETURN TO PETITION FOR WRIT OF HABEAS CORPUS Page** - 6

merits or evidentiary hearing by the following erroneous application or interpretation of relevant law and regulations:

- Improperly requiring Petitioner to provide evidence going to every element of an asylum claim
- Improperly importing an applicable corroboration requirement
- Applying an erroneous standard regarding persecution by non-governmental actors
- Improperly raising the standard for what constitute "torture."
- The "country conditions reports" that the AO offered and cited are inconsistent with the actual country conditions and applicable law and such evidence should and can only be properly analyzed in a full asylum hearing and not in a CFI setting.
- The AO unlawfully raised Petitioner's burden of proof

***The Correct Legal Standard and Applicable Law:***

First, the burden is on the government to demonstrate by a preponderance of the evidence that the applicant can reasonably relocate internally to an area of safety once there has been a finding of past persecution-and, as pointed out above, again, not only did Petitioner contend that he did indeed suffer (past) persecution, but the AO made the determination that he in fact did so. *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003); *see also Mashiri v. Ashcroft*, 383 F.3d 1112, 112223 (9th Cir. 2004) (finding the IJ erred by placing the burden of proof on ethnic Afghan to show "that the German government was unable or unwilling to control anti-foreigner violence on a countrywide basis.").

The reasonableness of internal relocation is determined by considering whether the applicant would face other serious harm in the place of suggested

**PETITIONER'S REPLY TO RETURN TO PETITION FOR WRIT OF HABEAS CORPUS Page** - 7

relocation; any ongoing civil strife; administrative, economic, or judicial infrastructure; geographical limitations; and social .and cultural constraints, such as age, gender, health, and social and family ties. *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214-15 (9th Cir. 2004) (citing 8 C.F.R. § 1208.13(b)(3)).

Secondly, as the 9th Circuit noted in *Singh v. Ilchert*, 63 F. 3d 1501, 1511(9th Cir. 1995), "This court presumes that in a case of persecution by a governmental body such as a national police force, the government (of India, in this case) has the ability to persecute the applicant throughout the country." In *Jakhry v. Mukasey*, 524 F.3d 1057, 1065 (9th Cir. 2008), the court held that "[i]n cases in which the persecutor is a government or is government-sponsored ...it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate." 8 C.F.R. Section 1208.13(b)(3)(ii).

In this case, Petitioner, to even the AO's satisfaction, demonstrated past persecution. In addition, it must be borne in mind that the BJP Party is a national party. Even the police, who ultimately did not aid the petitioner, and instead, blamed and scolded the Petitioner for having abandoned his Hindu religion, cannot be counted on to protect Petitioner should he have to return to India. Indeed, the petitioner credibly testified that the police could not and would not help him when

he sought their help. Despite demonstrating past persecution as well as showing that the government itself was his persecutors, the AO's attempted to overcome the presumption against internal relocation by citing to incomplete and inapplicable reports and "country conditions" and totally ignoring the evidence and answers that Petitioner provided and other and more relevant country conditions which Petitioner has cited to in his Petition, which do not need repeating here.

In sum, the AO failed to justify his ultimate determination that Petitioner had failed to demonstrate there is a "significant possibility" that he could establish in a full hearing before an Immigration Judge that he is eligible for asylum or would be subject to torture. Instead, the AO turned the inquiry from whether Petitioner ***could*** establish that he is eligible for asylum or ***would*** be subject to torture, to whether he has done so.

    c. <u>Torture</u>

Along with reporting that he was repeatedly beaten, Petitioner testified that threatened him with death, that "If you are seen going to the church again, then you will be killed." *Exhibit B, Electronic Document 1-4, Page 21* Despite this, the AO determined that "the record does not establish a significant possibility that it is more likely than not the applicant will be subjected <u>*to severe pain or suffering*</u> in another state of India."

Torture is defined as (1) "any act by which severe pain or suffering, <u>*whether*</u>

**PETITIONER'S REPLY TO RETURN TO PETITION FOR WRIT OF HABEAS CORPUS Page** - 9

*physical or mental*, is intentionally inflicted on a person" in a manner that is (2) "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

According Ninth Circuit case law, "torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, *punishing him or her for an act he or she or a third person has committed* or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Kamalthas v. INS,* 251 F.3d 1279, 1282 (9th Cir. 2001) (quoting 8 C.F.R. § 208.18(a)(1) (2000)).

"When evaluating an application for CAT relief, the IJ and the BIA should consider 'all evidence relevant to the possibility of future torture, including ... [e]vidence of past torture inflicted upon the applicant.' [8 U.S.C.] § 1208.16(c)(3)." *Avendano-Hernandez*, 800 F.3d at 1079. "CAT claims must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible CAT claims." *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015).

"The United States included a reservation when it ratified the Convention, narrowing the definition of torture with respect to 'mental pain or suffering.' The reservation states that 'mental pain or suffering refers to the prolonged mental harm caused by or resulting from (1) the intentional infliction or threatened infliction of severe physical pain or suffering; (2) the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality; (3) **_the threat of imminent death_**; or (4) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the sense or personality." *Nuru v. Gonzales*, 404 F.3d 1207, 1217 n.5 (9th Cir. 2005).

Courts throughout the U.S. have found that death threats can constitute mental torture when findings largely dependent on whether the person threatened suffered prolonged mental harm. *See* 2004 DOJ Memo, *supra* footnote 64, at 14-15, *citing Sackie v. Ashcroft*, 270 F. Supp. 2d 596 (E.D. Pa. 2003) (finding that individual forcibly recruited as child soldier and forced to take narcotics and threatened with imminent death during a three to four year period had suffered prolonged mental harm constituting torture during this period); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322 (N.D. Ga. 2002) (finding that plaintiffs had been

**PETITIONER'S REPLY TO RETURN TO PETITION FOR WRIT OF HABEAS CORPUS Page** - 11

victims of mental torture when they were forced to play Russian roulette and suffered "long-term psychological harm" as a result).

III. CONCLUSION

For the foregoing reasons, Petitioner is not bringing this petition to review the recent policies the current administration is implementing in the context of expedited removal proceedings requesting review of any "regulation, or a written policy directive, written policy guideline, or written procedure and its implementation," Instead, Petitioner is bringing this action pursuant to the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, and Petitioner has demonstrated he was not given a meaningful opportunity to apply for asylum by the Asylum Officer nor the Immigration Judge and is therefore being held pursuant to 'the erroneous application or interpretation' of relevant law."

Dated: November 27, 2019    Respectfully submitted,

s/ *Bashir Ghazialam*
Bashir Ghazialam, Esq., CASBN 212724
LAW OFFICES OF BASHIR GHAZIALAM
P.O. Box 928167
San Diego, California 92192
Phone (619) 795-3370
Facsimile (866) 685-4543
Email: bg@lobg.net

Attorney for Petitioner